IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

S.M., by her parent and next friend, D.C., by her
parent and next friend, N.W., by her parent and
next friend, T.P., by her parent and next friend, and
T.P., by her parent and next friend,

v.      C.A. No. 14-1575-LPS

Delaware Department of Education and Mark
Murphy in his capacity as Secretary of the
Delaware Department of Education

## MEMORANDUM ORDER

Students attending Reach Academy for Girls ("Reach") have filed suit in federal district court once again. Almost exactly one year ago, in *Reach Academy for Boys and Girls, Inc. v. Delaware Department of Education*, C.A. No. 13-1974-LPS (filed Nov. 25, 2013) (D. Del.) (hereinafter "*Reach II*"), I granted Reach students a preliminary injunction, requiring the Delaware Department of Education ("DOE") and its Secretary, Mark Murphy ("Secretary" and with DOE, "Defendants"), to extend Reach's charter for one more year. *See Reach II*, 8 F. Supp. 3d 574 (D. Del. 2014); *Reach II*, 2014 WL 2445804 (D. Del. May 30, 2014).[1] Rather than proceed to a trial that was scheduled for last July, the parties to last year's suit settled, so I was not required to resolve the plaintiffs' request that Defendants be ordered to renew Reach's charter for a full five-year renewal term. (*See Reach II* (D.I. 28))

On December 18, 2014, the Secretary accepted the recommendation of Delaware's Charter School Accountability Committee ("CSAC") and, at the State Board of Education

---

[1] I will not repeat here the history of Reach and its relationship with DOE, which are set out in some detail in the two opinions issued in last year's litigation, and in the present complaint and motion briefing.

1

("SBE") meeting, denied Reach's application for its charter to be renewed for five years. (*See* D.I. 11 at 4) According to Defendants, at the meeting the Secretary expressed his continued concerns with Reach's academic performance, noting that "although the school had made nominal gains, the students were still not reaching proficiency, and not enough of the students were making sufficient growth to maintain or achieve proficiency within three years or by 10th grade." (*Id.*)

On December 31, several current Reach students – identified by their initials, S.M., D.C., N.W., T.P., and T.P. ("Plaintiffs") – initiated this lawsuit, alleging eight causes of action, including constitutional and statutory violations, as well as breach of the settlement agreement that resolved last year's litigation. (D.I. 1) One week ago, on Monday, January 5, Plaintiffs filed a motion for expedited preliminary injunctive relief. (D.I. 3) I ordered and received briefing over the ensuing several days (D.I. 4, 11, 12) and heard oral argument on the motion last Friday, January 9. (*See* Transcript ("Tr."))

At the hearing, all parties requested that I rule expeditiously, and before Wednesday, January 14, which is the deadline for parents and guardians to submit "choice" applications so that students may attend a preferred school – including a charter school like Reach – in the 2015-2016 school year. I agree that, under these circumstances, it is important for me to make a decision quickly.

The issue before me is not whether Reach should remain open. Instead, what I must decide is whether the Plaintiffs have come forward, in the very first weeks of their lawsuit, with sufficient evidence to show that they are likely to succeed on the merits of any of the legal claims alleged in their complaint.

After reviewing the materials submitted by the parties, and considering the briefing and

the discussion at last week's hearing, I have concluded that Plaintiffs have failed to meet their burden. Therefore, for reasons I explain below, the Plaintiffs' motion for a preliminary injunction must be denied.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). In assessing Plaintiffs' request for this rarely-granted relief, I am required to consider four factors: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir. 1997). If, as I find here, Plaintiffs fail to meet their burden to demonstrate a likelihood of success on the merits, a preliminary injunction is not warranted, "regardless of what the equities seem to require." *Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000).[2]

## GENDER DISCRIMINATION

In Count I of their complaint, Plaintiffs allege, pursuant to 42 U.S.C. § 1983, gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. "In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). In Count II, Plaintiffs allege a violation of Title IX, 20 U.S.C. § 1681(a), which provides: "No person in the United

---

[2]Because Plaintiffs have failed to meet their burden to show a likelihood of success on the merits of any of their claims, I will not address the remaining factors that would also need to be evaluated in order to grant relief.

3

States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

I granted a preliminary injunction in the litigation last year based on my finding that the plaintiffs there were likely to succeed on the merits of their claims that closing Reach – the only all-girls public school in Delaware – would violate the Equal Protection Clause and Title IX. In ruling for the plaintiffs in the earlier case, I emphasized that I was "present[ed] [with] difficult questions arising in what appears to be a unique factual and legal context." *Reach II*, 8 F. Supp. 3d at 577. One key fact was that Delaware was continuing to fund an all-boys public school, Prestige Academy ("Prestige"). But also crucial was the fact that when I granted relief last year, Delaware had a statute – a "sunset provision" – which precluded the DOE from even considering any new applications for a single-sex charter school. *See* 14 Del. C. § 506(a)(3)(C) ("The same-gender charter school provisions shall sunset, for any new charter applications, on June 30, 2013, unless the General Assembly has otherwise acted to extend such date prior to its expiration.").

I explained in my opinions last year that it was the combination of Prestige's continued public funding and the sunset provision in the Delaware Code which made it likely that closure of Reach would constitute impermissible gender discrimination. I wrote: "On the facts *here* – where Delaware is providing boys the opportunity for a single-gender public school education and, for no articulated reason, is ***forever depriving its girls of the same opportunity*** – Plaintiffs are likely to show an Equal Protection violation." *Reach II*, 2014 WL 2445804, at *12 (emphasis added). Elsewhere, I added: "The difficulty of this case stems from the absence of any single-sex public charter school option for girls, ***now and – under current law – forever***, all while Delaware provides that very option to boys." *Id.* at *16 (emphasis added).

4

I further remarked that "it may also be that the State could lawfully fund one all-boys school and no all-girls school, so long as the State was also willing to entertain new applications for single-sex charter schools." *Id.* at *12 n.12. That situation was not before me last year – but now it is. In July 2014, the Delaware General Assembly eliminated the sunset provision. Delaware law now expressly permits the DOE to consider new applications for an all-girls charter school. *See* 14 Del. C. § 506(a)(3)(c) ("[T]here may not be more than one same-gender school for each gender operating simultaneously, and any same-gender charter school authorized prior to June 30, 2014 may have their charter renewed and continue to operate. Any subsequent same-gender charter school that seeks to operate in the state shall make its application to the Department of Education and the State Board of Education."). Delaware law now allows there to be up to one all-boys charter school *and* up to one all-girls charter school, even if Reach (or Prestige) is closed. *See id.*

The factual and legal context in which the current case arises, then, is strikingly different from that which was presented last year. In the prior case, allowing Reach to be closed would have forever prevented girls from receiving a potentially valuable educational opportunity that Delaware was at the same time providing to boys. Now, with the elimination of the sunset provision, allowing Reach to be closed will permit others who want to apply to be Delaware's only all-girls charter school to do so, and Defendants will be required to consider such applications. While the closure of Reach will result in girls not having the same opportunity as boys for some unknown period – apparently at least two years, given the time it takes for an application for a new charter school to be prepared, considered, and approved (*see* Tr. at 16) – it will also create an opportunity that does not exist now for another all-girls charter school to be approved.

Plaintiffs offer no evidence and no legal authority to support their apparent assumption that the statutory change is unimportant.[3] They have identified no evidence of intentional gender discrimination. Nor is there evidence that, in the period in which there is no all-girls charter school (when applications for a new all-girls charter school can be considered), there will not be substantially equal educational opportunities.

Therefore, I find that Plaintiffs have failed to prove that they are likely to succeed on the merits of their gender discrimination claims.

## DUE PROCESS

In Count III, Plaintiffs allege violation of the Due Process Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. A claim under the Due Process Clause is only cognizable if "the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property.'" *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984).

Plaintiffs claim violations of both the procedural and substantive components of due process. Both components require as a prerequisite that Plaintiffs have a protected property interest at stake. With respect to procedural due process, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). With respect to substantive due process, a property interest must have a "'particular quality' . . .

---

[3]Plaintiffs point to a recent complaint filed by the American Civil Liberties Union ("ACLU"), which asks the U.S. Department of Education to impose a moratorium on the opening of new charter schools in Delaware. Plainly, a not-yet-acted upon request from the ACLU that no new charter schools be approved is not nearly the same thing as a provision of the Delaware Code actually prohibiting approval of an application for an all-girls charter school.

not determined by reference to state law, but rather . . . [by] whether that interest is 'fundamental' under the United States Constitution." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000).

Plaintiffs assert that they have a protected property interest in continued enrollment at Reach until they are ready to graduate. They find this right created in 14 Del. C. § 407(a)(1), which provides: "A pupil accepted for enrollment in a school or program pursuant to this chapter shall be entitled to remain enrolled therein until graduation from the school or completion of the program provided that the pupil continues to meet the requirements for such school or program . . . ."

I disagree with Plaintiffs' contention that Section 407(a)(1) creates a property interest in attending a school of one's choice until graduation even if that school itself (for whatever reason) is no longer authorized to remain open. *See generally Suryanto v. Att'y Gen. of U.S.*, 398 Fed. App'x 830, 834 (3d Cir. 2010) ("When the decision to grant or withhold a benefit is entrusted to the discretion of a government actor, one has no constitutional property interest in obtaining that relief.") (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 564 (1981)). Nor is there any reason to view a purported right to attend the same school until graduation, regardless of whether that school meets the State's criteria for operating, as "fundamental" under the U.S. Constitution.

Plaintiffs offer no authority to support their position that they have a protected property interest at stake in this litigation. In last year's case, I found that the students suing there did not. *See Reach II*, 2014 WL 2445804, at *7. Then, this past Friday, Chancellor Bouchard, in denying a request to preliminarily enjoin the DOE and Secretary Murphy (among others) from revoking the charter of another school, New Moyer Academy, reached the same conclusion. *See In re*

7

*New Maurice J. Moyer Acad., Inc.*, C.A. No. 10398-CB, slip op. at 39-42 (Del. Ch. Ct. Jan. 9, 2015) (hereinafter "*Moyer*"). As Chancellor Bouchard wrote:

> Section 407(a)(1) of the Choice Program does not provide Delaware students a legitimate claim of entitlement to graduate from a school at which they are enrolled. . . .
>
> Although Section 407(a)(1) is to be construed broadly, a necessary and fundamental implication of Section 407(a) is that a school must be *open* for these Choice Program protections to attach. . . . In the case of [a charter school], this means that the protections of Section 407(a) are available only *if the school has a charter to operate*.

*Id.* at 40-41 (emphasis added; internal footnotes omitted).

I find that Plaintiffs have failed to prove that they are likely to succeed on the merits of their due process claims.

## STATE STATUTORY CLAIMS

In Count IV, Plaintiffs allege a violation of 14 Del. C. § 514A(d), which provides that a charter school "shall" be given an opportunity to present additional evidence beyond the data contained in the school's renewal report, to describe undertaken and planned improvements, and to detail future plans. Plaintiffs claim their rights under this section were violated because another provision, Section 514A(g), provides that renewal determinations "shall" be grounded in "evidence of the school's performance in accordance with the performance agreement set forth in the charter contract." In combination with indications that Reach's compliance with its proposed performance agreement was not considered (*see* D.I. 1 at ¶¶ 10, 29, 32, 34), and that Reach was judged based solely on past performance and not at all based on Reach's plans for future improvements (*see id.* at ¶¶ 42-44; Tr. at 38), Plaintiffs contend that Defendants failed to consider required evidence.

8

Plaintiffs have cited no authority recognizing a private cause of action by which they may come into court to enforce Section 514A. Moreover, Plaintiffs have identified no basis in the record from which I could find either (i) that the evidence of future plans they submitted was not before the Secretary when he made his decision about Reach, or (ii) that the Secretary failed to consider all of the record evidence when he made his decision about Reach. (*See* Tr. at 38-39)

In Count V, Plaintiffs allege a deprivation of their right to remain enrolled at Reach pursuant to the Delaware School District Enrollment Choice Program, specifically 14 Del. C. § 407(a)(1). I have already discussed why I (along with Chancellor Bouchard) do not agree with Plaintiffs' interpretation of Section 407(a)(1).

I find that Plaintiffs have failed to prove that they are likely to succeed on the merits of their state statutory claims.

## BREACH OF SETTLEMENT AGREEMENT

In Count VI, Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing that was part of the settlement agreement resolving last year's litigation. In particular, Plaintiffs allege:

> [R]ather than evaluate Reach's renewal application in a fair and impartial manner . . . Defendants sought to amend the Delaware Charter School Act . . . , evaluated Reach in a biased and vindictive manner, did not apply the same standard to Reach as applied to other renewal applicants and refused to consider evidence that it was statutorily mandated to consider.

(D.I. 1 at 127)

The implied covenant of good faith and fair dealing is applied "conservatively to ensure the parties' reasonable expectations are fulfilled," *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009), when such an implied covenant is needed "to handle developments or

contractual gaps that the asserting party pleads neither party anticipated," *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). Plaintiffs have not shown that these conditions are present here.

The April 29, 2014 settlement agreement explicitly contemplated that Reach would be seeking a renewal of its charter in 2014 and how Defendants would handle Reach's application like any other renewal application. (*See* Settl. Agrmt. at 2-3 ¶ 2) There is no gap that needs to be filled. Furthermore, Plaintiffs have presented little or no evidence that Reach was not subjected to the standard renewal process required by Delaware law (*see* D.I. 1 at ¶¶ 35-36, 40-41, 50-51), or that its renewal application was rejected for reasons other than that Reach's academic performance fell on the lower end of the "does not meet standard" rating after several years of falling below academic standards (*see id.* at ¶¶ 42, 59).

I find that Plaintiffs have failed to prove that they are likely to succeed on the merits of their claim for breach of the implied covenant of good faith and fair dealing.

## RACE DISCRIMINATION

In revised Count VII,[4] Plaintiffs allege racial discrimination in violation of Title VI of the Civil Rights Act of 1964, which prohibits discrimination by state programs receiving federal funding. *See* 42 U.S.C. § 2000d *et seq.* Specifically, Plaintiffs allege that "if a charter school's renewal application is based exclusively, or even predominantly, upon standardized tests scores when there exists a significant racial performance gap on those tests, this will lead to an excessive closure of schools with a large African American population." (D.I. 12 at 4)

However, the Supreme Court made clear in *Alexander v. Sandoval*, 532 U.S. 275 (2001),

---

[4]In the complaint, Plaintiffs alleged race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (D.I. 1 at ¶¶ 113-140) In their reply brief, Plaintiffs explained that they intended to plead their race discrimination cause of action under Title VI of the Civil Rights Act of 1964. (*See* D.I. 12 at 3-4)

that Title VI does not create a private right of action to enforce disparate-impact regulations through the court system. Moreover, Plaintiffs acknowledged at the hearing that the record does not contain evidence that the specific test used by Defendants – the Delaware Comprehensive Assessment System – has a racially disparate impact. (*See* Tr. at 28, 40)

I find that Plaintiffs have failed to prove that they are likely to succeed on the merits of their race discrimination claim.

## DECLARATORY JUDGMENT

Finally, Count VIII incorporates by reference the previous seven counts and asserts that Plaintiffs are entitled to declaratory and preliminary injunctive relief. Because Plaintiffs have failed to prove they are likely to succeed on the merits of any of their other claims, I must find that Plaintiffs have further failed to prove that they are likely to succeed on the merits of their declaratory judgment claim.

## CONCLUSION

I am mindful of the very real likelihood that one result of today's decision will be that Reach Academy will be closed, and the hundreds of girls now attending Reach will have to find different schools to attend. But, as I noted at the start, this case is not about whether a federal judge would like Reach to remain open. That is a decision for the DOE and the Secretary.

The only question before me is whether, after applying the applicable legal standards to the evidence in the record, the Plaintiffs have met the heavy burden they assumed by moving for the extraordinary relief of a preliminary injunction. I find, for the reasons set out above, that they have not.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' motion (D.I. 3) is **DENIED**.

**IT IS FURTHER ORDERED** that, no later than January 26, 2015, the parties shall submit a joint status report, to include their proposal(s) for how this matter should proceed.

Dated: January 12, 2015
Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK, U.S.D.J.