IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

S.M., by her parent and next friend, D.C., by her :
parent and next friend, N.M., by her parent and :
next friend, T.P., by her parent and next friend, and :
T.P., by her parent and next friend, :
: 
: 
v. : C.A. No. 14-1575-LPS
:
Delaware Department of Education and Mark :
Murphy in his capacity as Secretary of the :
Delaware Department of Education :

---

Duane Werb, WERB & SULLIVAN, Wilmington, DE.
Charles J. Brown, III, GELLERT SCALI BUSENKELL & BROWN, LLC, Wilmington, DE.

    Attorneys for Plaintiffs.

Kenisha L. Ringgold, Joseph C. Handlon, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

    Attorneys for Defendants.

## MEMORANDUM OPINION

April 16, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

## INTRODUCTION

Five students of the charter school Reach Academy for Boys and Girls, Inc. ("Reach") – S.M., D.C., N.M., T.P., and T.P., all by their parents and next friends (collectively, "Plaintiffs") – filed a Verified Complaint on December 31, 2014, requesting declaratory and injunctive relief against the Delaware Department of Education ("DOE") and Mark Murphy in his capacity as Secretary of the Department of Education ("Secretary Murphy") (collectively, "Defendants"), as well as class certification and attorneys' fees. (D.I. 1) Plaintiffs alleged gender and race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; gender discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; denial of due process in violation of the Due Process Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; violation of 14 Del. C. § 514A; violation of 14 Del. C. § 407(a)(1); and breach of an implied covenant of good faith and fair dealing in a settlement agreement between Defendants, Reach, and other Reach students (not Plaintiffs). (*Id.* at ¶¶ 94-143) Plaintiffs subsequently indicated they were revising their cause of action arising under the Equal Protection Clause of the Fourteenth Amendment to one arising under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (*See* D.I. 12 at 3-4)

On January 5, 2015, Plaintiffs filed a motion for expedited preliminary injunctive and related relief ("the Preliminary Injunction Motion"), citing as the basis for expedition the impending deadline for the submission of school "choice" applications for the 2015-2016 school year, which was January 14, 2015. (D.I. 3) The Court expedited its review of the Preliminary

1

Injunction Motion and heard oral argument on January 9, 2015. (*See* D.I. 21 ("Tr.")) On January 12, 2015, the Court issued a memorandum order, *S.M. v. Del. Dep't of Educ.*, 2015 WL 163499 (D. Del. Jan. 12, 2015) ("Memorandum Order" or "Mem. Ord."), denying Plaintiffs' Preliminary Injunction Motion. (D.I. 14)

On January 26, 2015, Plaintiffs advised the Court that they intended to pursue only their gender and race discrimination causes of action. (*See* D.I. 15)

On February 3, 2015, Defendants filed a Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 17) On February 23, in addition to opposing Defendants' motion, Plaintiffs requested leave to file an amended complaint. (D.I. 23 at 2) Briefing was completed on March 9, 2015. (D.I. 18, 23, 24)

The Court will grant Defendants' motion to dismiss and deny Plaintiffs' request for leave to file an amended complaint.

## BACKGROUND

Last year, in *Reach Academy for Boys and Girls, Inc. v. Delaware Department of Education*, 8 F. Supp. 3d 574 (D. Del. 2014) (hereinafter "*Reach II*"), the Court granted four Reach students – O.G., T.W., T.W., and S.O., by their parents and next friends – a preliminary injunction that required Defendants to extend Reach's charter for the 2014-2015 school year. None of the students who filed *Reach II* are Plaintiffs in the instant case.

On April 29, 2014, Defendants, Reach, and the four student plaintiffs in *Reach II* entered into a settlement agreement ("the Settlement Agreement"), whereby the *Reach II* plaintiffs agreed to dismiss without prejudice all remaining claims, and Defendants agreed not to appeal the Court's grant of a preliminary injunction. (*See* D.I. 24, Ex. B) Defendants further agreed that:

> Reach may apply for a renewal of its charter .... Reach's renewal
> application, if submitted, will be treated as any other application
> seeking a renewal of a charter term that expires on June 30, 2014
> and Defendants will consider and treat any such application under
> current law, regulations and practice. To be clear, and by way of
> example and not limitation, Defendants will provide to Reach the
> renewal report required by 14 Del. C. § 514A.

(*Id.* at 2-3)

In the most recent school year, Reach met the Adequate Yearly Progress ("AYP") standard under the No Child Left Behind Act and improved its academic rating from "Falls Far Below the Standard" to "Does Not Meet the Standard" (although it barely made it into the latter category). (*See* D.I. 1 at ¶ 1; D.I. 11 at 3) Reach applied for renewal of its charter on September 30, 2014, after receiving and responding to a renewal report issued by the DOE on April 30, 2014. (D.I. 1 at ¶¶ 36-40; D.I. 1, Ex. F) Following a public hearing on October 8, 2014, as well as meetings with Reach on October 15, 2014 and November 17, 2014, in which there were discussions of Reach's past performance and plans for improvement, the DOE's Charter School Accountability Committee ("CSAC") recommended that Reach's charter not be renewed based on its past performance. (*See* D.I. 1 at ¶¶ 40-42; D.I. 11 at 3 & n.13)

After a final public hearing on December 10, 2014, Secretary Murphy accepted CSAC's recommendation and rejected Reach's application for renewal of its charter on December 18, 2014, citing its poor academic performance. (D.I. 11 at 4 & n.13) The assessment of Reach's academic performance was based on student scores on the Delaware Comprehensive Student Assessment System ("DCAS"), a standardized test which Plaintiffs allege has a negative, racially disparate impact on low-income minorities. (D.I. 1 at ¶¶ 59-69)

Plaintiffs allege that Defendants did not treat Reach's renewal application in an impartial

manner, pointing to several other schools which have had their charters renewed despite ratings of "Falls Far Below the Standard" and "Does Not Meet the Standard," including the all-male charter school, Prestige Academy. (*See id.* at ¶¶ 17-19, 60-62) According to Plaintiffs, "rather than evaluate Reach's renewal application in a fair and impartial manner . . . Defendants . . . evaluated Reach in a biased and vindictive manner, did not apply the same standard to Reach as applied to other renewal applicants and refused to consider evidence that [they were] statutorily mandated to consider." (*Id.* at ¶ 127) Plaintiffs further allege that, pursuant to 14 Del. C. § 514A, the unconsidered evidence includes Reach's performance in relation to its performance framework and its plans for future performance, evidence which Plaintiffs allege was submitted to CSAC. (*Id.* at ¶¶ 9-16)

"The American Civil Liberties Union (the 'ACLU') [has] filed an administrative action with the Federal Department of Education alleging that the Defendants' implementation of the Delaware Charter School Law is resulting in the impermissible re-segregation of Delaware students." (*Id.* at ¶ 6) According to Plaintiffs, the decision to close Reach is evidence that DOE's "regulation of its charter schools is far more insidious than that. It ensures that low income minority students . . . will never be afforded the opportunity to attend a new charter school with a predominantly low income minority population beyond the few brief years of setting up the new school." (*Id.* at ¶ 64) Plaintiffs further allege that because the eight schools "targeted for closure or for takeover this year all have a large African-American population" (D.I. 23 at 17; *see also* D.I. 1 at ¶ 68), and Reach students will be returning to failing schools upon Reach's closure, "[w]ithout any real basis to support its actions, DOE is simply engaging in a

social experiment treating the most vulnerable members of society as guinea pigs" (D.I. 1 at ¶ 23).

## LEGAL STANDARDS

**Motion to Dismiss**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower*

5

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

In considering a motion to dismiss, the Court is confined in what it may consider. As the Third Circuit has explained:

> As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. . . . However, the court may [also] consider documents which are attached to or submitted with the complaint . . . . Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. . . . Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (internal quotation marks omitted).

**Motion for Leave to Amend**

In pertinent part, Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court, and factors the court should consider in exercising its discretion include "undue delay, bad faith, dilatory motive, prejudice, and futility." *Burlington Coat Factory*, 114 F.3d at 1434. An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted,

6

or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006).

Delay alone is an insufficient reason to deny leave to amend, but there are grounds to deny amendment if the delay is coupled with either an unwarranted burden on the Court or undue prejudice to the non-moving party (as a result of the amendment). *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). A party may suffer undue prejudice if the proposed amendment causes surprise, results in additional discovery, or adds costs to the litigation in defending against the new facts or theories alleged. *See id.* "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner. . . . [Moreover,] [t]he issue of prejudice requires that we focus on the hardship to the [non-movant] if the amendment were permitted." *Id.* (internal citations omitted).

## DISCUSSION

**Gender Discrimination**

Defendants argue that Plaintiffs have failed to state a claim for gender discrimination in violation of either Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."), or the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. While Plaintiffs appear to concede that Title IX permits the existence of a same-gender school for only one gender, they contend that this cannot cure the constitutional infirmities surrounding Defendants' closure of Reach (*see* D.I. 23 at 4), and that

7

"the interplay between 34 C.F.R. § 106.34(c), and 14 Del. C. § 506 represents an unreasonable, unconstitutional, arbitrary and capricious interpretation of Title IX and thus is not entitled to deference and is without the force of law" (D.I. 1 ¶ 54).

The Court agrees with Defendants that Plaintiffs have failed to state a claim under Title IX. One of the implementing regulations under that statute expressly states that same-gender charter schools do not have to exist in equal numbers for males and females. *See* 34 C.F.R. § 106.23(c) ("(1) General Standard. Except as provided in paragraph (c)(2) of this section, a recipient that operates a public nonvocational elementary or secondary school that excludes from admission any students, on the basis of sex, must provide students of the excluded sex a substantially equal single-sex school or coeducational school. (2) Exception. A nonvocational public charter school that is a single-school local educational agency under State law may be operated as a single-sex charter school without regard to the requirements of paragraph (c)(1) of this section."). DOE has satisfied Title IX's requirement of equal educational opportunities by making available coeducational schools.

The Court further agrees that Plaintiffs have failed to state a claim for intentional discrimination on which they can be granted relief under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. *See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) ("In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination."). Plaintiffs argue that they can show intentional discrimination by Defendants without alleging that Defendants acted with animosity against females, as long as they allege an intentional act by Defendants that fails to meet the "exceedingly persuasive" standard. *See, e.g.,*

*Miss. Univ. for Woman v. Hogan*, 458 U.S. 718 (1982) (finding violation of Equal Protection Clause where there was no exceedingly persuasive reason for state to exclude males from nursing school, even in absence of evidence of ill-will toward women). According to Plaintiffs, closing Reach based on an academic rating of "Does Not Meet the Standard" cannot be an excessively persuasive reason because the charters of other schools – including the all-male Prestige Academy – have been renewed despite having similar or worse academic ratings. (*See* D.I. 23 at 10-11)

Plaintiffs have failed to state a claim on which relief may be granted because they have failed to allege ***purposeful*** disparate treatment ***based on gender***. See *Shuman*, 422 F.3d at 151. Plaintiffs have not alleged that Reach's charter was not renewed on account of it being an all-female school. Having failed to allege ***purposeful*** discrimination, Plaintiffs have not stated a claim for gender discrimination by simply alleging that Defendants lack an exceedingly persuasive reason for allowing the maintenance of an all-male charter school while closing the only all-female charter school.

As the Court explained in the Memorandum Order, *in* denying Plaintiffs' request for a preliminary injunction this year (after granting similar preliminary relief in *Reach II*), these conclusions arise in a notably different legal context from the one presented in *Reach II*. In July 2014, Delaware amended its laws to permit new applications for a same-gender charter school so long no more than a single same-gender charter school for each gender is operating at any given time. *See* 14 Del. C. § 506(a)(3)(c) ("A charter school shall not . . . restrict admissions except . . . [b]y gender in the case of a same-gender school, except that there may not be more than 1 same-gender school for each gender operating simultaneously, and any same-gender charter

9

school authorized prior to June 30, 2014, may have their charter renewed and continue to operate. Any subsequent same-gender charter school that seeks to operate in the State shall make its application to the Department of Education and the State Board of Education."). By contrast, in *Reach II*, Delaware had a "sunset provision" which precluded DOE from even considering any new applications for a single-sex charter school, meaning that the closure of Reach would have forever deprived female students in Delaware of an opportunity that Delaware was providing to male students. (*See* Mem. Ord. at *2-3)

Nonetheless, Plaintiffs argue that Reach's closure will result in at least a two-year period before a new all-female charter school can be opened, and that this interim period will violate their rights under the Equal Protection Clause to be free from gender discrimination. (*See* D.I. 23 at 8) The Court does not agree with Plaintiffs that these allegations state a plausible claim of ***purposeful*** gender discrimination on which relief may be granted.[1]

Accordingly, Plaintiffs have failed to state a plausible claim of gender discrimination on which relief may be granted. The Court will grant Defendants' motion to dismiss Plaintiffs' gender discrimination claims.

**Breach of the Settlement Agreement**

The Court will dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing in connection with the Settlement Agreement. As an initial matter, Plaintiffs advised the Court (and Defendants) in a status report that they were proceeding only on their

---

[1]Defendants further contend that "[k]eeping Reach open prevents any new, single-gender female school from opening and would arguably constitute disparate treatment of female students. It would arguably consign female students seeking a single-gender educational experience to a subpar learning environment with an unacceptable academic performance" at Reach. (D.I. 24 at 2 n.2)

10

gender and race discrimination claims (*see* D.I. 15), and they offer no reason for why they should be permitted at this time to change course and try to revive their breach claim. Additionally, the Court agrees with Defendants that Plaintiffs – none of whom were parties to *Reach II* or to the Settlement Agreement – lack standing to press the breach claim. It does not appear that Plaintiffs were third-party beneficiaries of the Settlement Agreement. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (stating that to qualify as third-party beneficiary of contract, "(a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract"). Moreover, the implied covenant of good faith and fair dealing is applied "conservatively to ensure the parties' reasonable expectations are fulfilled," *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (internal quotation marks omitted), and the Settlement Agreement does not support a conclusion that it was within the reasonable expectations of Defendants, who were parties to that agreement, to benefit Plaintiffs in the manner Plaintiffs allege.

Accordingly, Plaintiffs have failed to state a plausible claim for breach of the implied covenant of good faith and fair dealing on which relief may be granted. The Court will grant Defendants' motion to dismiss Plaintiffs' claim.

**Race Discrimination**

Defendants argue that Plaintiffs have failed to state a claim for race discrimination pursuant to Title VI of the Civil Rights Act of 1964, which prohibits discrimination by state

11

programs receiving federal funding. *See* 42 U.S.C. § 2000d *et seq.* As an initial matter, the operative Verified Complaint does not reflect Plaintiffs' revised cause of action under Title VI (*see* D.I. 12 at 3-4), but rather pleads race discrimination pursuant to the Equal Protection Clause (D.I. 1 at ¶ 134). While this is arguably immaterial, *see Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 557 (3d Cir. 2011) ("Title VI . . . prohibitions against discrimination are coextensive with those of the Equal Protection Clause."), the Verified Complaint suffers from a more substantial flaw. While Plaintiffs argue in their briefing that Defendants engaged in intentional race discrimination, the cause of action in the Verified Complaint alleges only disparate impact, allegedly arising from Defendants' actions (*see* D.I. 1 at ¶¶ 133-40), which does not adequately state a claim for race discrimination claim under either Title VI or the Equal Protection Clause. *See Doe*, 665 F.3d at 551-52 (3d Cir. 2011) ("[E]ven conscious awareness on the part of the [decisionmaker] that the [policy] will have a racially disparate impact does not invalidate an otherwise valid law, so long as that awareness played no causal role in the adoption of the policy.") (internal quotation mark omitted).[2]

In order to state a claim for race discrimination pursuant to Title VI, Plaintiffs must allege that Defendants ***purposefully*** discriminated ***based on race***. *See id.* "Determining whether invidious discriminatory purpose was a motivating factor [in the adoption of a facially neutral policy] demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Pryor*, 288 F.3d at 564. Plaintiffs' allegations regarding racial discrimination are limited to the disparate racial impact resulting from Defendants' reliance on DCAS scores, which

---

[2]Plaintiffs do not really defend the adequacy of the race discrimination claim stated in the Verified Complaint, arguing instead that "Plaintiffs ***can*** state a claim for impermissible racial discrimination." (D.I. 23 at 17) (internal capitalization omitted; emphasis added)

12

Defendants relied on to close Reach (*see* D.I. 1 at ¶¶ 60, 66); that out of the three schools that applied for renewal this year with low academic ratings, only Reach – the one school with a large African American demographic – was not renewed (*see, e.g., id.* at ¶¶ 17-19, 60-62); and that all eight schools that Defendants have targeted for closure or takeover this year are also largely African American (*id.* at ¶ 68). However, there is nothing in the Verified Complaint or attached exhibits evidencing the racial performance gap of DCAS scores (*see* Tr. at 40), much less Plaintiffs' knowledge of such disparate impact; and Plaintiffs have not alleged that Defendants *intended* to target African American students but, rather, that their evaluation system has a disparate impact on African American students. Unlike in *Pryor*, here Plaintiffs' allegations are insufficient to support a reasonable inference of *purposeful* race discrimination. (*See generally* D.I. 23 at 17) ("Plaintiffs agree that in order to prevail on their racial discrimination claim, they must establish intentional discrimination."))

Accordingly, Plaintiffs have failed to state a plausible claim of race discrimination on which relief may be granted. The Court will grant Defendants' motion to dismiss Plaintiffs' claim. The Court will further deny Plaintiffs' request for leave to amend as the Court has already evaluated the sufficiency of the claims as they would exist in their amended form. Under the circumstances, amendment would be futile.[3]

---

[3] Although not entirely clear, to the extent Plaintiffs are seeking leave to amend any other claims, that request is denied. The other claims have either been dropped (and no basis has been provided for why Plaintiffs should be permitted to add them back to the case) or amendment would be futile.

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss and deny Plaintiffs' request for leave to file an amended complaint. An appropriate Order follows.